UNITED STATES of America, Plaintiff-Appellee,

v.

Charles E. VARNER, Defendant-Appellant.

No. 29513.

United States Court of Appeals, Fifth Circuit.

April 12, 1971.

On Petition for Rehearing

John A. DeVault, III, Jacksonville, Fla., Williams, Geilich & Potter, Melbourne, Fla., Robert P. Smith, Jr., Jack-

sonville, Fla., for appellant; Ralph Geilich, Melbourne, Fla., Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, Fla., of counsel.

Kendell W. Wherry, Asst. U. S. Atty., John L. Briggs, U. S. Atty., Jacksonville, Fla., for appellee.

## ON PETITION FOR REHEARING

Before JOHN R. BROWN, Chief Judge, and TUTTLE and GODBOLD, Circuit Judges.

### PER CURIAM:

The court has carefully considered the petition for rehearing, largely because of the insistence by appellant that the indictment was bad because it charged Varner with having used "bank drafts" for deposit to his account, whereas there was no proof of the deposit of anything other than either "customers' drafts" or simple bank checks. It is the contention of the appellant on this motion for rehearing, that this permitted the government to introduce evidence that was irrelevant to the issue raised by the indictment.

As we stated in the opinion, we conclude that the indictment was not subject to challenge, and, as pointed out by Chief Judge Brown specially concurring, a challenge to the indictment was not timely made.

The petition also complains of this court's determining that counsel's waiver of the right to request a bill of particulars was harmless because "no harm was done by such waiver."

The record here clearly shows that well in advance of the trial the parties both understood the nature of the prosecution to be just as we stated it in our opinion, regardless of the fact that in the indictment the documents that were deposited by Varner, and for which he was given immediate credit and against which he drew, and all of which were ultimately returned, were called "bank drafts." This is true because all the documents were submitted to counsel for Varner, so that there could be absolutely no doubt in the minds of the defendant what documents the government was proceeding on. Moreover, it will appear that during the hearing of one motion, the trial court commented, "As I read the indictment the charge is a check-kiting scheme." To this comment, counsel for appellant said, "Yes, sir."

Furthermore, when we look at the opening statement to the jury made by counsel for the appellant it is perfectly plain that he was aware of the nature of the case that he had to defend. The case came on for trial three months after the comments quoted above. During counsel's opening argument he conceded the correctness or accuracy of all of the documents that were mentioned in the indictment. As to them, he said, "We admit them and stipulate that they are evidence in this case and that they were not honored and that they were returned to the bank so that you will not have to go through the time and effort to admit what is true. The drafts are correct and the drafts were not paid. So it is a bad draft involved and say [sic] there was no intent to defraud. * * *" Counsel further stated, "We will stipulate and agree that the bank accounts of these checks, showing the dates, the debits, credits, withdrawals from some time in June 1965 through April of 1966 would be chronologically a record of this account of Mr. Varner's. * * * We will show not only there was no scheme to defraud but other than conjecture and speculation—now, more than that the charge against this man is that he deposited these bad drafts or bad checks in his account to bring his account up to date for the purpose of intent to deceive or defraud the Bank of South Brevard * * * and he intended to defraud the bank by means of the scheme of depositing worthless checks or drafts in his account so that he could get his account brought up to cover the bad checks in the account or deficiency so that it wouldn't be in an overdrawn status."

This quotation is intended to make plain the fact that counsel for the de-

fendant himself drew no distinction between "bank drafts" and the actual drafts or checks, which were deposited by Varner and on which he obtained instant credit from the bank of which he was a director. Counsel undertook to base his defense on the fact that the mere depositing of these instruments and the fact that none of them was honored was not sufficient to permit the jury to infer that Varner knew or intended that they would not be honored at the time he deposited them in his account. It is for this reason that we state that the failure of counsel to urge the court to grant a bill of particulars did no harm, because counsel was fully apprised before the trial of precisely what the government's case was all about.

Appellant also strenuously argues that evidence introduced at the trial tending to show that certain bank accounts on which the "drafts" were drawn did not exist. In point of fact, some of the documents purport on their face to be ordinary customers' checks which the jury could believe were drawn on non-existent accounts. With particular reference to the $36,000 document, it purports to be a check signed by "Max Field Enterprises, By Charles E. Varner." The face of the document bears the statement "For the purpose of obtaining payment of this check I hereby represent that the amount stated herein is on deposit in said bank in my name, subject to this check and is hereby assigned to the payee or holder thereof." Charles E. Varner was named as the payee, and Charles E. Varner purported to sign on behalf of Max Field Enterprises. Testimony is undisputed that there was no account in the Century City Branch of the Bank of America of Los Angeles, California, in the name of Max Field Enterprises, and, in spite of the weakness of Field's testimony, fully commented on by counsel to the jury and by the trial court on motion for judgment notwithstanding the verdict, the only testimony in the record shows that at no time did Max Field operate under the name of Max Field Enterprises, and at no time did Max Field authorize Charles E. Varner to sign any check on his behalf.

As stated, we have carefully considered the petition but find it to be without merit.

The petition for rehearing is denied.